IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Marcia S. Krieger

Civil Action No. 17-cv-02565-MSK-NYW

THOMAS R. RIPPER,

    Plaintiff,

v.

ENCANA SERVICES COMPANY, LTD.,

    Defendant.

---

# OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court pursuant to the Defendant's ("Encana") Motion for Summary Judgment **(# 34)**, Mr. Ripper's response **(# 35)**, and Encana's reply **(# 36)**.

## FACTS

The Court summarizes the pertinent facts here and elaborates as necessary in its analysis. To the extent that facts are disputed, the recitation here reflects the facts taken in the light most favorable to Mr. Ripper.

Mr. Ripper, who was approximately 56 years old at the time of the pertinent events, was employed by Encana. Encana is involved in the business of oil and gas drilling. After it retires certain lengths of pipe from business use, Encana sometimes sells the used (or "junk") pipe to third parties.

In addition to being employed by Encana, Mr. Ripper and his son-in-law Chance Walz (who was also an Encana employee) maintained a side business buying junk pipe from oil and gas developers and selling it at a profit to ranchers and others. Mr. Ripper purchased pipe from

Encana through Mitch Steinke, Encana's Completions Coordinator. Mr. Steinke typically sold Encana's used pipe to Mr. Ripper or another local buyer, as they tended to buy in quantities that were worth Mr. Steinke's time and offered higher prices than did non-local buyers. At times, Mr. Steinke would inform Mr. Ripper (and the other buyer) of available supplies of pipe; at other times, Mr. Ripper would contact Mr. Steinke to inquire whether he had pipe available to meet one of Mr. Ripper's buyer's needs. Mr. Steinke and Mr. Ripper communicated about such purposes through Mr. Ripper's Encana e-mail account.

At some point, Mr. Ripper discussed his pipe-selling business with his Encana supervisor, Brad Ankrum. Upon leaning that Mr. Ripper was buying pipe from Encana, Mr. Ankrum became concerned about potential conflicts of interest. Mr. Ankrum suggested that Mr. Ripper file a Conflict of Interest Declaration Form consistent with Encana's policies prohibiting conflicts of interest. On April 15, 2015, Mr. Ripper filed a form explaining that "I buy junk tubing from Encana. My supervisor is aware of my business dealings." In response to the question of whether he had a conflict of interest to declare, Mr. Ripper wrote "I'm not sure."

In October 2015, Mr. Ankrum spoke with Mr. Ripper again about his pipe purchases. Mr. Ankrum had received an inquiry from Encana officials regarding Mr. Ripper's purchases of pipe. Mr. Ankrum offered to "go to bat" for Mr. Ripper with the officials. Mr. Ripper declined that offer, stating that he would cease buying Encana's junk pipe. There is a very slight dispute in the record with regard to whether Mr. Ankrum specifically instructed Mr. Ripper not to buy any more Encana pipe, or whether Mr. Ankrum simply accepted Mr. Ripper's agreement to not do so, but that disagreement is not particularly material. (It appears both parties understood that Mr. Ripper would continue buying pipe from other businesses, however.) Mr. Ankrum instructed Mr. Ripper not to use Encana's resources or time for operating his used pipe business.

In November 2015, Mr. Steinke contacted Mr. Ripper about some pipe that was available. Mr. Ripper states that he contacted Mr. Ankrum about Mr. Steinke's call and inquired whether purchasing the pipe would be a problem. Mr. Ripper states that he "never received any response" from Mr. Ankrum and thus "assumed that Encana offering junk pipe to me and inviting my purchases evidenced that it was not." The record indicates that Mr. Ripper purchased a quantity of Encana pipe in November 2015 and again in February 2016, after being called by Kelly Hobman, an Encana Investment Recovery Specialist, who was aware of Mr. Ripper having purchased used pipe in the past.[1]

In late February 2016, an anonymous tipster contacted Encana's Ethics Hotline, reporting concerns that Mr. Walz might be engaging in acts of bribery or unfair competition. The incident involved the tipster's belief that an Encana vendor had provided an earthmoving excavator to Mr. Walz for his personal use, and that Mr. Walz having bragged that due to Mr. Ripper's influential position within Encana, he "could get anything he wanted" from vendors. Encana began an investigation into the report, and in the course of conducting that investigation, learned of Mr. Ripper's October 2015 promise to Mr. Ankrum not to purchase any more Encana pipe and his subsequent purchases in November 2015 and February 2016. Concluding that Mr. Ripper had breached his promise not to buy pipe, on March 16, 2016 Encana terminated Mr. Ripper's employment. Mr. Walz' employment was also terminated for his participation in the pipe-selling business.

Mr. Ripper contends that, on the same day as his termination, Encana engaged in "a significant reduction in force" in Mr. Ripper's region. Those employees who were laid off

---

[1] There is some evidence in the record that Ryan Tompkins, Mr. Steinke's replacement, made three additional sales of used pipe to Mr. Ripper between January and March 2016.

received severance payments based on their years of service. One of the employees laid off had a similar tenure to Mr. Ripper, and thus, Mr. Ripper believes that, had he not been terminated, he would have received the same severance payment as that employee - approximately $118,000.

Separately from the issues relating to his termination, Mr. Ripper raises claims based on his non-selection for a position as a Consolidated Coordinator in September 2015. The position was created during a reorganization of Encana's operations, and three separate Coordinator jobs were combined into one. Douglas Rosa, an Encana Superintendent, selected Brandon Bagwell to fill a new Consolidated Coordinator position, a change that Mr. Rosa considered to be a "lateral move" for Mr. Bagwell. Mr. Rosa did not announce the vacancy or solicit applications or interest in the position; he simply decided that Mr. Bagwell was the best person for the job. Mr. Rosa considered Mr. Ripper for the Consolidated Coordinator position, but rejected him because Mr. Ripper did not have production experience and Mr. Bagwell did. Mr. Ripper estimates that Mr. Bagwell is "in his early 30s." Mr. Ripper questions that explanation, contending that production activities in the area were on the decline at the time while gathering operations (Mr. Ripper's area of expertise) were more significant, and because Mr. Rosa himself had sufficient production experience to manage the remaining production needs in the area.

Based on these facts, Mr. Ripper commenced this action, alleging two claims for relief: (i) age discrimination, in violation of the Age Discrimination In Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, arising both from Mr. Ripper's non-selection for the Consolidated Coordinator position and his termination; and (ii) age discrimination in violation of the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-402, based on the same facts.

Encana now moves **(# 34)** for summary judgment arguing that Mr. Ripper cannot establish either of his age discrimination claims because he cannot show that the adverse

4

employment actions (his non-selection for the Coordinator position and his termination) occurred in circumstances giving rise to an inference of age discrimination and cannot show that Encana's proffered reasons for those decisions is pretextual.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the

responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. Denial of Coordinator position

Mr. Ripper's claims under the ADEA and CADA are analyzed using the same standards. *Agassounon v. Jeppesen Sanderson, Inc.*, 688 Fed.Appx. 507, 509 (10th Cir. 2017). To establish a claim of age discrimination under either statute, Mr. Ripper must first demonstrate a *prima face* case of discrimination by showing: (i) that he is a member of a protected class; (ii) that he was qualified for the position he held or sought; (iii) that he suffered an adverse employment action; and (iv) that adverse action occurred in circumstances giving rise to an inference of age discrimination. If Mr. Ripper carries that burden, then Encana bears the burden of articulating a legitimate and non-discriminatory reason for the adverse action, and ultimately Mr. Ripper bears the ultimate burden of demonstrating that Encana's proffered explanation for the action is a

pretext for age discrimination. *See Laul v. Los Alamos Natl. Labs.*, 765 Fed.Appx. 434, 440 (10th Cir. 2019).

The Court first considers the requirement that Mr. Ripper must show that he was qualified for the Consolidated Coordinator position. When considering the "qualifications" element of the *prima facie* case, the Court distinguishes between qualification standards that are objective in nature and those that are subjective. If the employer disqualified the plaintiff from consideration based on the plaintiff's failure to meet an objective qualification requirement, the Court may consider that defect at the *prima facie* stage; if the employer rejected the plaintiff for subjective reasons, the question of whether the employee was qualified is typically considered later in the analysis, such as at the pretext stage. *See Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1273-74 (10th Cir. 2006).

Here, Encana states that it selected Mr. Bagwell for the Consolidated Coordinator position – and passed over Mr. Ripper – because production experience was an essential qualification for the job. Mr. Ripper does not dispute that a candidate possessing "production experience" is, at least at bottom, a determination that can be made objectively. (Assessment of the quality of that experience may be subjective, but the existence of such experience would not appear to be.) And indeed, Mr. Ripper does not dispute Encana's contention that Mr. Bagwell had production experience and he did not. Rather, Mr. Ripper's argument is limited to the contention that the Consolidated Coordinator position <u>should not</u> have focused on production experience, because production in the relevant market was waning in importance.

This Court must give employers "wide latitude in setting job standards and requirements and in deciding whether applicants meet those standards," and the Court does not "assess which of an employer's stipulated qualifications ought to be required of applicants for a particular

7

position." *Salemi v. Colorado Public Employees' Retirement Ass'n.*, 747 Fed.Appx. 675, 690-91 (10th Cir. 2018). The Court's job is not to ask whether Encana's decision to have a Consolidated Coordinator who focused on production issues was "wise, fair, or correct," but only whether Encana sincerely believed that this was the correct focus for the job. Evidence that Encana's focus on production was mistaken or poor business judgment does not suggest that the decision was discriminatory, and the Court's job is not to sit as a "super-personnel department, second guessing employers' honestly held (even if erroneous) business judgments." *Dewitt v. Southwestern Bell Telephone Co.*, 845 F.3d 1299, 1307-08 (10th Cir. 2017). Although Mr. Ripper argues that Encana's decision to select a Consolidated Coordinator with production experience is "illogical and incoherent to the point of being incredible," he has not adduced any evidence that <u>Encana itself</u> did not honestly believe that production experience was a must for the job. Accordingly, Mr. Ripper has failed to state a *prima facie* case of age discrimination with regard to his non-selection for the Consolidated Coordinator position.

### C. Termination

The Court then turns to Mr. Ripper's claim that his termination was the result of age discrimination. Once again, the Court first considers whether Mr. Ripper can demonstrate a *prima facie* case of age discrimination. In this instance, Mr. Ripper satisfies the first three elements of the *prima facie* case, but struggles on the fourth: demonstrating that his termination arose in circumstances giving rise to an inference of discrimination. Employees might demonstrate such circumstances in a variety of ways, *e.g.* by pointing to comments by the decision-maker that reflect ageist bias; evidence that the employer treated similarly-situated younger employees more favorably, evidence that the employee was replaced by a substantially

8

younger individual; or by pointing to suspicious timing or the sequence of events leading to the adverse action. *See Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005).

The only evidence that Mr. Ripper points to that, he contends, suggests that his termination was the result of age discrimination is the fact that, on or about the same date as his termination, Encana laid off several employees, paying them severance. Mr. Ripper reasons that Encana terminated him in order to avoid having to pay him a considerable severance payment if he were instead laid off.[2]

The record is fairly thin as to whether Mr. Ripper would have been included in the layoffs had he not been terminated. The parties have not pointed the Court to any witness who testified about Encana's plans in this regard. At most, Mr. Ripper has introduced an exhibit that appears to be an Encana document that explains how it would have calculated Mr. Ripper's severance payment, but the record does not contain any explanation of how or when this document was generated or when or under what circumstances it was provided to Mr. Ripper. Although this Court has profound doubts that this skeletal production suffices to meet even the *de minimis* burden represented by the *prima facie* case, the Court will nevertheless assume that Mr. Ripper has satisfied his initial burden and will proceed to the remainder of the analysis.

Encana has met its burden of adducing a legitimate, non-discriminatory reason for Mr. Ripper's termination: that he violated his agreement with Mr. Ankrum to cease purchasing used pipe from Encana after October 2015. Thus, the Court turns to the final stage of the analysis:

---

[2] This argument bears only a somewhat orthogonal relationship to age discrimination. Because severance owed was apparently determined in part by years of service with Encana, employees with numerous years of service were more likely to receive larger severance payments. And employees with numerous years of service were likely to be over the age of 40, so as to garner protection under the ADEA.

whether Mr. Ripper has come forward with evidence that Encana's proffered reason is a pretext for age discrimination. To establish pretext, Mr. Ripper must demonstrate facts that show that Encana's proffered reason suffers from such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions that a reasonable factfinder could conclude that it is not the true reason for the action (and that age-related animus was likely to be the true reason). *Jaramillo v. Colo. Judicial Dept.*, 427 F.3d 1303, 1308 (10th Cir. 2005).

Mr. Ripper does not actually dispute the fundamental facts that Encana relied upon in deciding to terminate him. He concedes that he told Mr. Ankrum that he would not buy any more Encana pipe, and that notwithstanding such promise, he subsequently bought Encana pipe on more than one occasion. Thus, Mr. Ripper has not really pointed to any inconsistencies or implausibilities in Encana's reason for his termination. The fact that Mr. Steinke or other members of divisions with Encana charged with disposing of the used pipe initiated subsequent contacts with Mr. Ripper – apparently unaware of his promise to Mr. Ankrum not to buy more pipe – does not alter the analysis. Indeed, the record suggests that Mr. Ripper himself realized that his promise to Mr. Ankrum might trump Mr. Steinke's invitation to him to buy more pipe because, as Mr. Ripper decided to ask Mr. Ankrum whether he could be relieved of his promise and make more purchases. Mr. Ankrum's non-response was just that – inaction. Had Mr. Ankrum authorized the purchase, Mr. Ripper's argument might have had some merit, but Mr. Ripper's decision to treat Mr. Ankrum's non-response as permission was not made in reliance on anything that Mr. Ankrum or Encana did. As unfortunate as Mr. Ripper's assumption was, there is no evidence that casts doubt on Encana's proffered reason for his termination, preventing him from carrying his burden at the pretext stage.

Mr. Ripper argues that Encana's explanation is suspect insofar as its investigation team continued to conduct interviews with interested individuals (*e.g.* Mr. Ankrum, Mr. Steinke) into April 2016, weeks after having terminated Mr. Ripper on March 15, 2016. But there are many legitimate reasons why Encana would choose to continue the investigation even after it had terminated Mr. Ripper: to detect whether any other Encana employees had engaged in misconduct (relating to the pipe-selling business, Mr. Walz's interactions with vendors, or any other known or unknown improprieties by anyone), to ascertain whether changes in Encana policy needed to be made, to be prepared to reconsider or defend Mr. Ripper's termination as further facts warranted, and so on. Given Mr. Ripper's admission to the fundamental facts supporting his termination, issues such as the length or timing of the investigation simply do not present the sort of evidence that could support a finding of pretext.

Accordingly, Encana is entitled to summary judgment on Mr. Ripper's age discrimination claim relating to his termination.

## **CONCLUSION**

For the foregoing reasons, Encana's Motion for Summary Judgment **(# 34)** is **GRANTED**. The Clerk of the Court shall enter judgment in favor of Encana on all claims and close this case.

Dated this 29th day of January, 2020.

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
Senior United States District Judge